IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

vs.                                      Case Nos.:        3:18cr89/RV/MAF
                                                          3:20cv5998/RV/MAF

DEMETRICE A. THOMAS,
        Defendant.

_____

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant Demetrice A. Thomas'

Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255

and the Government's response in opposition.   (ECF Nos. 117, 119.)   The

case was referred to the undersigned for the issuance of all preliminary

orders and any recommendations to the district court regarding dispositive

matters.   *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed.

R. Civ. P. 72(b).   The court recommends that the § 2255 motion be denied

without an evidentiary hearing.   *See* Rules Governing Section 2255 Cases

8(a) and (b).

## I.      BACKGROUND

On September 6, 2018, a federal grand jury returned a three-count indictment charging Defendant Thomas, along with his brother Jared M. Thomas, with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, maintaining a premises for the purpose of distributing a controlled substance and possession with intent to distribute 5 kilograms of cocaine on a date certain.   ECF No. 15.   On September 10, 2018, the Government filed a Notice of Enhancement Information indicating its intent to seek enhanced penalties and identifying multiple previous felony drug convictions, including a prior federal felony drug conviction in this court.[1]  ECF No. 25.

Thomas was arrested on October 2, 2018 in the Southern District of Texas, and appointed counsel Stephen Sutherland filed a notice of appearance on November 6, 2018, shortly after Thomas' first appearance in this district.   ECF Nos. 45, 47.   Upon Thomas' request, the court

---

[1] At the plea proceeding the Government admitted that only Thomas' prior federal drug conviction in Case 3:00cr91/RV remained a qualifying prior due to the age of his other convictions.   ECF No. 105 at 3.

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

continued his trial from December 3, 2018 until January 14, 2019.   ECF No. 48, 49.

On January 7, 2019, Thomas entered a plea of guilty as charged pursuant to a written plea agreement, factual basis, and sealed supplement.   ECF Nos. 58-60.   The Factual Basis for Guilty Plea ("Factual Basis") explained that during separate federal investigations, multiple cooperating defendants identified Thomas as a large-scale drug trafficker who obtained drugs in Houston, Texas and distributed them in the Northern District of Florida.   ECF No. 59 at 1.   As a result of this information, in May of 2018, law enforcement obtained a search/tracking warrant of Thomas' cellular telephone.   The additional information they learned led them to begin surveillance of a "target residence" in Pensacola belonging to co-defendant Jared Thomas, and they confirmed Thomas' involvement in drug distribution activities taking place there.   During the night of August 16-17, 2018, while Thomas was present, law enforcement approached the target residence to execute a search warrant.   *Id.* at 5. As they approached, Thomas began to depart in a rental vehicle.   Law enforcement engaged their flashing lights and Thomas "then began to flee

at a high rate of speed to evade capture."   *Id.*   He was not apprehended at that time.

During the subsequent execution of the search warrant at the target residence, law enforcement discovered five and a half kilograms of cocaine in a backpack in a shed as well as a firearm and other items commonly used in the narcotics trade.   ECF No. 59 at 5.   A review of Jared Thomas' cell phone revealed text messages and photos related to the conspiracy.

By agreeing to the Factual Basis, Thomas admitted he was involved in a conspiracy to distribute "in excess of five kilograms of cocaine" with Jared Thomas and others, with the target residence being used as a distribution point.   ECF No. 59 at 6.   The "elements of the offense" also specified that the offense involved "more than" or "in excess of" five kilograms of cocaine.   *Id.* at 6-7.

Thomas made two handwritten notations on the Factual Basis.   First, he clarified that he did not store cocaine in a disabled vehicle at the target residence and he did not know if others did.   ECF No. 59 at 3.   Second, he identified the "other drugs" transported between Texas and Florida with the words "such as liquid codeine."   *Id.* at 4.   Thomas also made a handwritten notation on the Supplement to the Plea Agreement regarding

his willingness to cooperate, to which the Government responded.   ECF No. 60 at 1; ECF No. 105 at 3, 19.

During Thomas' rearraignment, the court orally informed him of the elements of each offense, including the fact that the Government had to prove the offense conduct as to Counts One and Three involved "five kilograms or more" of cocaine.   ECF No. 105 at 12-13.   The court asked Thomas, who was under oath, if he had carefully read the Factual Basis with counsel before signing it, and he indicated that he had.   *Id.* at 13. The court noted the handwritten modifications to the document and confirmed Thomas' agreement with the changes before the court placed its own initials on the documents.   *Id.* at 13-14.   The court then asked whether "[s]ubject to those changes, are these facts set out in this document true?", and Thomas responded in the affirmative.   *Id.* at 14.

The court explained the sentences Thomas faced:   a mandatory minimum of 15 years' imprisonment and up to life imprisonment on Counts One and Three, and up to 20 years' imprisonment on Count Two.   ECF No. 105 at 15.   Thomas acknowledged having talked with counsel about the "15 to life," as well as how the guidelines are calculated.   *Id.* at 16. Thomas, who had been through one previous federal sentencing,

acknowledged that the guidelines calculations were complicated, that he knew they were not subject to prediction, and that his sentence could not be promised or guaranteed.   *Id.* at 16-17.    He denied the existence of either any promises not set forth in the plea agreement or any threats or intimidation that affected his decision to plead guilty.   *Id.* at 19.   The court asked if he was satisfied with counsel's representation, and he said "[y]es, sir. In certain – in certain ways."   *Id.* at 20.   When the court asked him to repeat his answer, he responded only "[y]es, sir" and he denied having any complaints about counsel's representation or questions about his case.   *Id.*

The Final Presentence Investigation Report ("PSR") calculated Thomas' total offense level at 35.   ECF No. 74, PSR ¶ 67.   He had a base offense level of 34 because of the Government's representation that the seized cocaine, currency, text message communications on seized cellular telephones and information from cooperating defendants established that the conspiracy involved at least 100 kilograms of cocaine.   PSR ¶s 48, 59. Thomas received a two-level adjustment for his role as an organizer, leader, manager or supervisor because he directed the actions of co-conspirator Jared Thomas.   PSR ¶s 49-52, 62.   He also received a two-level adjustment for obstruction of justice for fleeing from law enforcement

and for attempting to hide his identity when he was apprehended.   PSR ¶s 44, 47, 56.   Despite receiving the obstruction of justice enhancement, Thomas also received the full three levels of credit for acceptance of responsibility.   PSR ¶s 65, 66.   Thomas had three criminal history points, and thus a criminal history category of II.[2]   The applicable advisory guidelines range was 188 to 235 months.   PSR ¶ 133.   The defense filed no objections.   PSR ¶ 162.

At his March 26, 2019, sentencing, Thomas assured the court he had received a copy of his PSR and carefully read it and gone over it with counsel.   ECF No. 99 at 2.   He said he had not found any factual errors in the report that had not been corrected, and as far as he could tell, the report was accurate.   *Id.* at 3.   The Government asked that Thomas be sentenced to a term in excess of the guidelines range, and in response the defense argued this was unnecessary, noting the remoteness of Thomas' criminal history.   *Id.* at 4-7.   When given the opportunity to speak, Thomas

---

[2] Thomas has multiple criminal convictions that were not scorable pursuant to U.S.S.G. § 4A1.2(e)(3) because of the age of the convictions.   PSR ¶s 70-85.   In his previous federal case, 3:00cr91/RV, his criminal history category was VI.   *See* ECF No. 3:00cr91/RV, ECF No. 84 at 7.   The court sentenced him to a term of 216 months in that case.   *Id.* at 2.   The sentence was later reduced to 144 months, Thomas was released from the custody of the Bureau of Prisons on January 14, 2011, and the court granted early termination from supervised release on April 2, 2013.   ECF No. 3:00cr91/RV, ECF Nos. 99, 166.

apologized to the court, the Government and his family and asked the court for leniency.   *Id.* at 8.   He brought to the court's attention his previous early termination of supervised release, stated that he had accepted responsibility in this case, and asked for a sentence at the low end of the guidelines.   *Id.* at 9.   Thomas did not question any of the court's findings or the information in the PSR.   The district court, who had also sentenced Thomas in his first federal case, reminded Thomas that if he had been sentenced six months earlier, before the passage of the First Step Act, he would have faced a mandatory life sentence.   *Id.* at 11.   The court then sentenced him to a term of 234 months' imprisonment.   *Id.* at 12.

Thomas appealed, represented by Patricia Jean Kyle, Esq.   He challenged the district court's reliance on the facts set forth in the PSR as the basis for both its drug quantity determination and the two-level obstruction of justice enhancement.   ECF No. 110.   Because he had not raised these issues before the district court, the Eleventh Circuit reviewed them for plain error.   *Id.* at 2.   The appellate court stated that the district court had properly relied on undisputed facts in the PSR after giving Thomas the opportunity to object to the factual conclusions of the PSR and the use of the report in sentencing.   *Id.* at 3, 4.   It concluded that by not

objecting below, Thomas waived his challenge to the district court's drug quantity finding, and he could not show plain error because the PSR "clearly provided that the conspiracy involved at least 100 kilograms of cocaine."[3]  *Id.* at 4.   It similarly concluded that the district court did not plainly err by applying the obstruction of justice enhancement.   *Id.* at 5.

Thomas timely filed the instant § 2255 motion claiming counsel was constitutionally ineffective for failing to file objections to (1) the assessment of drug quantity, (2) the obstruction of justice enhancement, and (3) the role enhancement.   The Government opposes the motion.

## II.    ANALYSIS

### A. General Standard of Review

Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014).   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of

---

[3] The PSR did clearly state that the conspiracy involved 100 kilograms of cocaine. ECF No. 74, PSR ¶ 48.   However, specific factual support for this conclusion is not contained within the report, and as will be discussed below, co-defendant Jared Thomas' PSR reached a different conclusion about total drug quantity on identical facts. ECF No. 56, PSR ¶ 48.

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."    *Lynn v. United States,* 365 F.3d 1225, 1234 (11th Cir. 2004).    However, ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012).

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different.    *Strickland v. Washington*, 466 U.S. 668, 687 (1984).    "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both

that counsel's performance was unreasonable, and that [ ]he was prejudiced by that performance." *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007) (quotation marks, brackets, and citations omitted)[4]; *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.").   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts "must indulge a strong presumption that

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."   11th Cir. R. 36-2.

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

counsel's conduct fell within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S.

86, 112 (2011) (quoting *Strickland*).   In the case of alleged sentencing errors, such as those raised in this case, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, his sentence would have been less harsh due to a reduction in his offense level.   *Glover v. United States*, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

Again, it is the defendant's burden to provide factual support for his contentions regarding counsel's performance.   *See Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Dale v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020) (citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).   A defendant must identify the errors or omissions of which he complains and explain how they affected the outcome of the proceedings.   *Boyd*, 697 F.3d at 1333.   Furthermore, counsel is not

constitutionally deficient for failing to preserve or argue a meritless claim.

*Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020) (counsel not

constitutionally ineffective for failing to raise meritless objection to use of

prior drug convictions as predicate offenses under ACCA); *Lattimore v.*

*United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not

ineffective for failing to make a meritless objection to an obstruction

enhancement); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir.

2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233

(11th Cir. 2008)) (counsel not ineffective for failure to raise objection that

was counter to the express language of the guidelines commentary);

*Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not

ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at

1313.   This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d

1177, 1180 (11th Cir. 2000).   Lawyers in every case could have done something more or different, and the issue is not what is possible, but only what is constitutionally compelled.   *Chandler*, 218 F.3d at 1313.   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped his case in some way does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary

hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

   B. Thomas' Ineffective Assistance of Counsel Claims

   Each of Thomas' three ineffective assistance of counsel claims assails counsel's failure to make a particular objection to the PSR.   Once a defendant objects to a fact contained in the PSR, the Government bears the burden of proving the disputed fact by a preponderance of the

evidence.   *United States v. Martinez*, 584 F. 3d 1022, 1027 (11th Cir. 2009) (citations omitted); *see also United States v. O'Brien*, 560 U.S. 218, 224 (2010); *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997).   The Government must satisfy its burden by presenting reliable and specific evidence.   *Martinez*, 584 F. 3d at 1027 (quotation omitted).

However, a defendant who does not object to facts in the PSR is deemed to have admitted those facts for sentencing purposes.   *United States v. Patterson*, 595 F.3d 1324, 1326 (11th Cir. 2010); (*United States v. Davis*, 587 F.3d 1300, 1303–04 (11th Cir. 2009) (per curiam); *United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009).   As stated by the Eleventh Circuit, the sentencing court is permitted to make factual findings at sentencing based on facts to which a defendant did not clearly and specifically object.   *Davis*, 587 F. 3d at 1303-04; Fed. R. Crim. P. 32(i)(3)(A); *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006); *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

Thomas' attorney made no objections to the PSR in this case.   ECF No. 72. Sometimes, if a defendant wishes to cooperate, the decision not to file objections is a strategic decision, made to avoid jeopardizing a defendant's chance of earning a substantial assistance motion.   In this

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

case, Thomas indicated in writing before formally entering his guilty plea that he wished to cooperate with the Government.   ECF No. 60.[5] However, the Government made clear, both in writing on the face of the supplement to the plea agreement and in open court during the rearraignment, that it did not intend to offer Thomas this opportunity.   *See* ECF No. 60; ECF No. 105 at 18-19.   Thus, the cooperation issue appears to have been "off the table" at the time counsel decided not to file objections to the PSR.   The Government nonetheless suggests this was the reason no objections were filed.   ECF No. 119 at 10 ("[Thomas] even desired to cooperate with the government, and thus he put forth no objections to his actions as articulated.")   Thomas claims that he requested that counsel file objections.   However, the record does not contain an affidavit from Mr. Sutherland, and therefore, the court has no information about counsel's decision-making processes.

In any event, counsel cannot be found ineffective for failing to raise a meritless objection. *Hollis*, 958 F.3d at 1124; *Lattimore*, 345 F. App'x at 508.   If the record establishes that the objections Thomas now claims

---

[5] In Thomas' reply, however, he states he "does not admit to being willing to cooperate." ECF No. 131 at 17.

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

counsel should have raised were without merit, he could not have been prejudiced by counsel's failure to raise them.

The Government places great weight on Thomas' admissions at sentencing that the facts set forth in the PSR were true and correct and his failure to bring any disagreement with the PSR to the court's attention. Thomas now asserts when he told the district court at sentencing that the PSR was accurate and contained no factual errors (ECF No. 99 at 3), he "did not understand that the question(s) referred to many things, including the establishment of the drug quantity for purposes of sentencing or that he himself (outside of counsel) could present an objection to the drug quantity."   ECF No. 117-1 at 9.   This representation, particularly given Thomas' previous conviction of a federal drug felony carries dubious weight.   Furthermore, while Thomas is correct that the law does not require, and in some instances prohibits, a represented individual from raising his own objections, Thomas' acquiescence is in some manner telling.

Each of Thomas' claims will now be addressed in turn, with a focus on the question of prejudice.

1.  Failure to Object to Drug Quantity

Thomas first contends that counsel was constitutionally ineffective because he failed to object to the PSR's ultimate quantity determination, which led to him being sentenced based on a "larger amount of drugs than charged in the Indictment, agreed to in the plea agreement admitted in the factual basis and change of plea hearing, or proved by evidence to a judicial body…"   ECF No. 117-1 at 5; ECF No. 131 at 3.

As noted above, both the indictment and the plea documents indicated that Thomas was responsible for in excess of five kilograms of cocaine.   ECF Nos. 15, 59.   Beyond that parameter, the amount was not specified, and Thomas did not agree to a specific quantity, or a limit on the quantity, when he entered his plea.   The PSR determined, based on the Government's evidence, that the quantity of cocaine involved in the conspiracy was over 100 kilograms of cocaine (a sum well "in excess of" five kilograms).   ECF No. 74, PSR ¶ 48.   The difference between five kilograms and 100 kilograms did not affect the applicable statutory penalties, *see* 21 U.S.C. § 841(b)(1)(A), but it did affect Thomas' guidelines calculations.   Offenses involving at least 5 but no more than 15 kilograms of cocaine correspond to a base offense level of 30, while offenses

involving at least 50 but no more than 150 kilograms of cocaine correspond

to a base offense level of 34.    *See* U.S.S.G. § 2D1.1(c)(3) and (5).

Thomas now claims that he "did not agree" with the Probation

Officer's drug quantity conclusions.   ECF No. 117-1 at 8.   He further

asserts he had asked counsel to object to any amount above the 5 ½

kilograms of cocaine physically recovered and states he did not "approve or

sign" Mr. Sutherland's letter to the court in response to the PSR (ECF No.

72) in which counsel reported that after in depth review of the PSR with

Thomas, there were "no corrections, deletions, or objections."   ECF No.

117-1 at 8.   Thomas asserts he was prejudiced by counsel's failure to

object because had counsel objected, the Government would not have

been able to present reliable and specific evidence to support the quantity

of cocaine attributed to him.   Additionally, he notes that the court of

appeals would have reviewed his appellate challenge more favorably (as

clear error rather than plain error), which he claims would have lead to a

different result.

The Government maintains Thomas cannot show prejudice.   First, it

claims his sworn assertions to the court during the plea colloquy and at

sentencing regarding the scope of the conspiracy defeat his claim that only

5 ½ kilograms of cocaine was involved.   Second, it asserts that if Thomas had objected, it would have brought in cooperating individuals to testify regarding drug quantity at sentencing, and thus he cannot show prejudice.

Determination of Drug Quantity

To calculate the base offense level for an offense involving a controlled substance conspiracy, a court must determine "the quantity of illegal drugs properly attributable to" the defendant.   *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996).   Frequently, the amount of drugs seized does not reflect the scale of the offense.   In such event, the district court must approximate the drug quantity attributable to the defendant.   *United States v. Dixon*, 901 F.3d 1322, 1349 (11th Cir. 2018); U.S.S.G. § 2D1.1 comment. (n.5).   The court's estimate "may rely on evidence demonstrating the average frequency and amount of a defendant's drug sales over a given period of time."   *United States v. Almedina*, 686 F.3d 1312, 1316 (11th Cir. 2012) (citing *Frazier*, 89 F.3d at 1506).   The court's approximation "'may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, [but it] cannot be based on calculations of drug quantities that are merely

speculative.'"   *Almedina*, 686 F.3d at 1316 (*quoting United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998)).

    <u>Weight of Rule 11 Admissions</u>

    A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.   *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citing *Blackledge*).   This is because solemn declarations made under oath in open court carry a strong presumption of verity.   *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin,* 767 F. 3d at 1216 (citing *Blackledge*).   They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice.   *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin*, 767 F.3d at 1216.   In fact, such allegations are subject to summary dismissal. *Winthrop-Redin*, 767 F.3d at 1216 (citing *Blackledge*, 431 U.S. at 74).   A defendant "bears a heavy burden to show his statements [under oath] were false."   *Winthrop-Redin,* 767 F.3d at 1217 (quoting *United States v.*

*Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)).   "[I]f the Rule 11 plea taking

procedure is careful and detailed, the defendant will not later be heard to

contend that he swore falsely."   *United States v. Stitzer*, 785 F.2d 1506,

1514, n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d 1241,

1243 (5th Cir. 1975)).

<u>Drug Quantity Evidence in this Case</u>

Thomas pled guilty pursuant to a written Plea Agreement and Factual

Basis, which he signed on December 31, 2018.   ECF No. 58-59.   He

thereby admitted his involvement in a conspiracy involving in excess of five

kilograms of cocaine.   Unlike the vast majority of such documents that

come before the court, Thomas' Factual Basis contained two handwritten

"corrections" made by Thomas that were initialed by the Assistant U.S.

Attorney and later by the court.   These relatively minor corrections noted

that Thomas did not store cocaine in a disabled vehicle at the target

residence, and identified liquid codeine as one of the "other drugs" that was

transported between Texas and Florida.   ECF No. 59 at 3, 4.   The

undersigned finds Thomas' specific corrections to be highly probative

evidence that Thomas thoroughly reviewed the document and agreed with

the remainder of its contents.   Furthermore, Thomas affirmed to the court

under oath that he had carefully read the Factual Basis with his attorney before signing it, and that subject to the corrections, the facts set out in the document were true.   ECF No. 105 at 13-14.   His self-serving, after the fact assertion that there were statements in the Factual Basis that were "untrue" rings hollow.   *See, e.g.,* ECF No. 117 at 15.

Thomas makes much of the fact that the Factual Basis reflects that law enforcement only seized 5 ½ kilograms of cocaine during the search of the target residence.   However, this was clearly not the extent of the conspiracy.

The Factual Basis states Thomas made "multiple trips" between Texas and Florida over the course of thirty days including one where law enforcement discovered him in possession of $9000.00 in cash in his glove compartment.   ECF No. 59 at 2.   A disabled vehicle parked on Jared Thomas' property was used to store cocaine for later distribution, although Thomas denied using it or knowing it was used for this purpose.   *Id.* at 3. Surveillance units observed cocaine being mixed with a cutting agent to expand the distribution quantity, and numerous vehicles arriving and quickly departing from Jared Thomas' residence, confirming distribution activity.   *Id.*   Thomas used Jared Thomas' tractor trailer to transport

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

cocaine and drug proceeds between Texas and Florida in furtherance of the conspiracy.   *Id.* at 4.   The evening that law enforcement first attempted to arrest Thomas, there was traffic arriving at and departing from the residence in a manner indicative of cocaine distribution.   *Id.* at 4-5. Although Thomas eluded law enforcement that day, law enforcement executed the search warrant at the target residence, recovering, in addition to the actual cocaine, items consistent with the drug trade including "a box containing [an unspecified amount of] empty kilogram wrappers and heat sealed bags."   *Id.* at 5.   Jared Thomas was apprehended and review of his cellular telephone "confirmed his conspiratorial communications with Thomas" and revealed images of kilograms of cocaine as well as images of tens of thousands of dollars in cocaine proceeds.   *Id.* at 6.   This information does not direct a finding that a particular amount of cocaine was involved in the conspiracy, but it certainly was enough to place Thomas on notice that the Government was aware that the conspiracy extended beyond the 5 ½ kilograms physically recovered.[6]

---

[6] Thomas' assertion that he requested that counsel object to any finding in excess of 5 ½ kilograms also supports a conclusion that he knew more drugs were involved.   ECF No. 117-1 at 8.

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

In a seemingly tacit acknowledgment of the admissions he made via the Factual Basis, Thomas asserts that this sort of proof would not have been sufficient to sustain the district court's finding of over 100 kilograms, had counsel made a proper objection.   ECF No. 117-1 at 11.   Absent an objection, he claims he was sentenced without the district court having the opportunity to gauge the reliability of the hearsay statements from coconspirators, or to assess that the sentencing quantity was a fair, accurate and conservative estimate of drug quantities attributable to him. *Id.* at 12.

The record contains no information documenting, for instance, the number of trips or the quantity of drugs transported each time.   The Government nonetheless contends that if Thomas had lodged an objection to drug quantity, it "could have simply brought in multiple cooperating individuals to testify regarding drug quantity at the sentencing hearing," including Thomas' co-defendant and brother.   ECF No. 119 at 11, n.3. The Government did not identify any other cooperating individuals by name or suggest what information such persons could or would have provided, nor did it suggest that it had a case agent who would have been able to provide relevant testimony.

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

The record reflects that Jared Thomas was prepared to testify against his brother at trial.    *See* ECF No. 63.    However, there is no evidence that Jared Thomas' testimony alone would have been sufficient to establish that the conspiracy involved the 50 kilograms of cocaine required to meet the minimum threshold for the application of base offense level 34, much less that "the conspiracy involved at least 100 kilograms of cocaine" as stated in Thomas' PSR.

To deepen its understanding of this case, the undersigned reviewed and compared the PSRs of Jared Thomas and Defendant Thomas.    The narrative descriptions of the offense conduct contained in Jared Thomas' final PSR (ECF No. 56, ¶s 17-47) and in Defendant Thomas' final PSR (ECF No. 74, PSR ¶s 17-47) are in all material respects identical.[7] Paragraph 48 of Jared Thomas' Final PSR, dated January 3, 2019, states:

> Drug Quantity: According to the government, based upon the seized cocaine, currency, text message communications located on seized cellular telephones, as well as information provided by cooperating defendants, the conspiracy involved at least 15 to 50 kilograms of cocaine.

---

[7] An error in Jared Thomas' PSR indicating that Demetrice Thomas was apprehended while fleeing from the target residence was not contained in Thomas' PSR.    *Compare* ECF No. 56, PSR ¶ 44 with ECF No. 74, PSR ¶ 44.

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

ECF No. 56, PSR ¶ 48.

The corresponding paragraph of Thomas' draft PSR, dated February 15, 2019, as well as his Final PSR dated March 13, 2019, on the other hand, reads:

> Drug Quantity: According to the government, based upon the seized cocaine, currency, text message communications located on seized cellular telephones, as well as information provided by cooperating defendants, the conspiracy involved at least 100 kilograms of cocaine.

ECF No. 69, (draft) PSR ¶ 48; ECF No. 74, PSR ¶ 48.   There is no explanation in the record for this discrepancy.   The quantity of cocaine is attributed to the conspiracy as a whole, rather than each individual defendant.   It is interesting to note that despite this discrepancy the Government neither objected to drug quantity in Jared Thomas' PSR (*see* ECF No. 56, PSR ¶ 137) nor mentioned drug quantity in its response to Thomas' PSR.   ECF No. 73.   In any event, PSRs and responses thereto are sealed, and defense counsel would not have had access to Jared Thomas' PSR and could not have been on notice of the disparate amount of drugs attributed to the conspiracy in the two PSRs.

The record is silent as to the reason counsel did not object to drug quantity.   The only record evidence in support of the 100 kilograms of

cocaine is Thomas' admission at sentencing, which he now seeks to retract.   Thomas claims he requested counsel object to drug quantity and counsel refused to do so.   ECF No. 131 at 8.   He says he believed that because he had an attorney, he could not personally make an objection. *Id.* at 10.   Ultimately, Thomas admits that he "accepted his counsel's advice and agreed, during sentencing, that the PSR was correct," and "while he disagreed with counsel, he believed and followed counsel's advice."   *Id.* at 11.

From a cold record, and even after consulting with U.S. Probation, the lack of other proof supporting the 100 kilogram finding is troubling. This is particularly so given the inconsistent amounts of cocaine noted in the co-conspirators' PSRs and the Government's vague assertion that it could have brought in "multiple [unidentified] cooperating individuals" to testify.   ECF No. 119 at 11, n.3.

Thomas correctly notes that no federal law requires him to advocate on his own behalf, while represented by counsel.   While self-advocacy may not be required, a defendant does not have license to retract what he now contends were false statements he made to the court merely because he is displeased with the harshness of the sentence imposed.   There is no

record evidence contemporaneous with these proceedings that supports either Thomas' contention that he asked counsel to file an objection to drug quantity or that he believed the amount of drugs attributed to him was inflated.    *See* ECF No. 131 at 26 (identifying Thomas' "greatest concern" as relating to the obstruction enhancement).    He admits that he ultimately accepted counsel's advice and agreed that the PSR was correct, an admission that necessarily encompassed drug quantity.    To determine drug quantity, the court was permitted to rely on unobjected to facts in the PSR, including Thomas' own admissions.    *Patterson*, 595 F. 3d at 1326; *Davis,* 587 F. 3d at 1303-04; *c.f. United States v. Soun*, 303 F. App'x 753 (11th Cir. 2008) (defendant's admissions alone were sufficient to support the drug quantity finding); *United States v. Heard,* 561 F. App'x 873 (11th Cir. 2014) (a defendant's admissions are sufficient to establish drug quantity); *United States v. Perlaza*, 305 F. App'x 540, 542 (11th Cir. 2008) (defendant's admission in the plea agreement provided support for drug quantity finding).    As such, he has not shown counsel was constitutionally ineffective for failing to object.

## 2. Failure to Object to Obstruction Adjustment

Thomas also contends counsel was ineffective because he did not object to the two-level adjustment for obstruction of justice. Such an objection would have been meritless, as it was supported by the Factual Basis, Thomas' statements under oath, and the additional facts set forth in the PSR.

The Factual Basis states in relevant part:

> As law enforcement was approaching to execute the search warrant, THOMAS began to depart in a rental vehicle. Law enforcement vehicles engaged their flashing lights, and THOMAS then began to flee at a high rate of speed to evade capture. Law enforcement was unable to catch THOMAS during his flight.

ECF No. 59 at 5. *Id.* Thomas told the court, under oath, that the facts set forth in the Factual Basis were true. ECF No. 105 at 14. And, given Thomas' specific disagreement with and notations on other areas of the Factual Basis, it is noteworthy that he made no amendments to this section. Additionally, although not part of the factual Basis, the PSR reflects that when Thomas was arrested at a hotel room in Houston, Texas he had a false identification card and attempted to "portray himself as someone other than his true identity." ECF No. 74, PSR ¶ 56. Such facts would also have supported the obstruction enhancement.

In his reply, Thomas claims that he not only asked counsel to object to the obstruction enhancement, but also that he consulted with another attorney, Atoya Collins, Esq., of Texas, about this matter.   ECF No. 131 at 14.   Ms. Collins allegedly authored an email which she sent to defense counsel regarding Thomas' concerns over the obstruction of justice points. ECF No. 131 at 14, 26.   In her email, Ms. Collins notes that Thomas' "greatest concern from the PSI report are the points that were allocated to his sentencing range as it relates to the allegations of obstruction."   *Id.* at 26.   Ms. Collins explains that Thomas disputes the facts as set forth in the PSR, although it is not clear whether she was aware of Thomas' admissions via the Factual Basis and at his rearraignment.   Thomas claims that had counsel objected to the adjustment, the Government could not present testimony to supports its position that he fled, while simultaneously baldly asserting he would be able to present unspecified evidence and witnesses which would prove that he did not flee.   *Id.* at 19. There is nothing before the court that would suggest what evidence the unidentified witnesses might have presented, and his own testimony would have been contrary to his prior admissions under oath.

Counsel was not ineffective for declining to make what would have been a meritless objection to the obstruction of justice enhancement.

### 3. Failure to Object to Role Adjustment

Thomas' final claim is that counsel was constitutionally ineffective for not objecting to the role adjustment he received pursuant to U.S.S.G. § 3B1.1(c).   He claims this adjustment was improperly based on "mere speculation."   ECF No. 117-1 at 30.   Section 3B1.1(c) of the Sentencing Guidelines provides for a two-level increase for a defendant who is "an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)" (which sections apply to activities involving five or more participants).   The commentary to this section provides that a defendant need only have been the organizer, leader, manager or supervisor of one other participant to qualify for this adjustment.   U.S.S.G. § 3B1.1, comment. (n.2).

The PSR references paragraph 46 of the report in support of the application of the enhancement.   ECF No. 74, PSR ¶ 62.   This paragraph provides in relevant part:   "A review of text messages located within the cellular telephone of Jared Thomas, searched pursuant to warrant,

confirmed his conspiratorial connection to Demetrice Thomas and *his* direction of others to respond to the target residence when the contraband was inbound from Texas."[8]   This sentence could reasonably be interpreted as stating that Jared Thomas was the individual providing direction to others.   However, the PSR writer interpreted it as meaning that Demetrice Thomas directed Jared Thomas, rather than that Jared Thomas directed others.   *See* ECF No. 74, PSR ¶s 52-53.   Jared Thomas' PSR reflects that he did not receive a role adjustment.   ECF No. 56.

Thomas now contends that he and his brother were equal partners in the conspiracy, with neither exerting control over the other, and that they shared equally in the profits.   He asserts that counsel's deficient representation "caused [him] to admit to the district court that he directed his brother when the contraband was in-bound from Texas, a statement that is neither fact, nor is it true."   ECF No. 117-1 at 31.

---

[8]  This sentence tracks a similar sentence in the Factual Basis:   "A review of text messages located within the cellular telephone of defendant JT confirmed his conspiratorial communications with THOMAS and his direction of others to respond to the TARGET RESIDENCE when cocaine was inbound from Texas (e.g. – text messages regarding the price for kilograms of cocaine, text messages about the presence of law enforcement)."   ECF No. 59 at 5-6.

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

The Government again notes Thomas admitted, under oath, that the facts set forth in the Factual Basis were true and correct, subject to his handwritten modifications (ECF No. 105 at 13) and that he confirmed the accuracy of the PSR at sentencing.   ECF No. 99 at 3.   Given the fact that he made changes, it is reasonable to assume if Thomas believed any other portion of the Factual Basis to be untrue, he would have made those changes as well.

Thomas asserts that any admission to being a manager of his brother was due to his lack of knowledge of the law and counsel's failure to explain to him what the negative effect it would have on his sentence.   ECF No. 131 at 20.   Based on the record in this case, Thomas has not established he was prejudiced by counsel's failure to object.

### III.   CONCLUSION

An evidentiary hearing is not necessary to resolve Defendant's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.   For the foregoing reasons, the court finds that Defendant has not shown that any of the claims raised in his motion to vacate, set aside, or

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Therefore, his

motion should be denied in its entirety.


## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings

provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of

appeal must still be filed, even if the court issues a certificate of

appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the

denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000) (explaining how to satisfy this showing) (citation

omitted).   Therefore, it is also recommended that the court deny a certificate

of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final

order, the court may direct the parties to submit arguments on whether a

certificate should issue."   If there is an objection to this recommendation by

Case Nos.: 3:18cr89/RV/MAF; 3:20cv5998/RV/MAF

either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 117) be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 7th day of September, 2021.


                    s/ Martin A. Fitzpatrick
                    **MARTIN A. FITZPATRICK**
                    **UNITED STATES MAGISTRATE JUDGE**


                    **<u>NOTICE TO THE PARTIES</u>**

        **Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   An objecting party must serve a copy of its objections on all other parties.   A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**